# IN THE COURT OF APPEALS OF IOWA

No. 16-2137
Filed August 2, 2017

**ALBERT E. HOLCOMB IV and HOLCOMB ENTERPRISES, LLC,**
    Plaintiffs-Appellants,

**vs.**

**DELHI LAKEVIEW ESTATES, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Delaware County, Thomas A. Bitter, Judge.

Holcomb and his business, Holcomb Enterprises, LLC, appeal the district court's judgment that denied his request for a declaration that an easement by implication in favor of his property existed across the "Waterfront Access Area" of Lake Delhi. **AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Janelle Grace Ewing of The Sayer Law Group, P.C., Waterloo, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

In 1977 Camp-O-Delhi, Inc. (C-O-D) purchased land adjacent to Lake Delhi in Delaware County, Iowa. In 1984 the land was platted as the Camp-O-Delhi subdivision. The subdivision consists of some 92 lots, lake frontage area, and also road area. Twenty of the lots front the lake, including lot 89, the property that is the subject of this litigation. In 1984, C-O-D also recorded restrictive covenants for the subdivision. In 1985, Delhi Lakeview Estates Landowners Association, Inc. (DLE) was formed and became successor to C-O-D. DLE purchased from C-O-D the lake frontage area, which is a strip of land between the shoreline and the lakefront lots—basically the beach area—called the "Waterfront Access Area." DLE also purchased C-O-D's docks. Also in 1985, C-O-D sold lot 89 to the Stenders. In 2005 DLE recorded restrictive covenants for the subdivision. They mirror the 1984 C-O-D covenants.

Ownership of lot 89 passed through several hands before Albert Holcomb IV purchased on contract a portion of lot 89 in 2006.[1] Included in the purchase was a bar-and-grill business located on that lot, known over time as Camp-O or Camp-O-Delhi. Holcomb and his business, Holcomb Enterprises, LLC, operated the bar and grill as Camp-O Beach Resort after its purchase.[2] The lake side of the lot Holcomb purchased abuts the "Waterfront Access Area" of Lake Delhi. In 2007 Holcomb requested DLE furnish materials to repair or replace DLE's deteriorating docks. When DLE denied Holcomb's request, he removed the DLE docks, purchased materials, and built new docks. His application for a dock

---

[1] In 2010, after paying off the contract, Holcomb received a warranty deed for the property.

[2] We hereinafter refer to the plaintiffs collectively as "Holcomb" and in the singular.

permit was denied because DLE, the riparian owner, would not sign the permit application. In 2008, Holcomb was cited by the Iowa Department of Natural Resources for failing to have a dock permit. Holcomb shuttered the business sometime in 2008 or 2009 when renewal of his liquor license was denied. After an appeals process, Holcomb's liquor license was approved in the summer of 2010. He was preparing to reopen the bar when, in July 2010, a major flooding event caused the dam that created Lake Delhi to fail. Holcomb's bar and grill had six feet of standing water during the flooding. The lake was drained dry. After the flood, the building was condemned because "it was off its foundation," and sometime thereafter, the building was torn down. Holcomb was uncertain if and when the dam would be replaced and the lake restored, so he "left the property as is until the dam return[ed]." However, he removed the docks he had built and put them in storage. Holcomb then moved to suburban Portland, Oregon, where he resided at the time of trial.

At the time of purchase, Holcomb obtained the property's abstract containing its chain of title. Included therein is a May 1985 warranty deed conveying to DLE the "waterfront and roads as shown" on the 1984 Camp-O-Delhi subdivision plat and "all Boat Docks along the waterfront" of that subdivision. The deed noted it was "subject to all restrictive covenants of record." The recorded covenants specified that the lake's frontage would "be owned and maintained by the lot owners' association"—DLE—and could not be sold. The covenants also included that the docks would "be owned by [DLE]" and could "be rented by the year to lot owners," with the income from those rentals being used to pay the association's expenses. Holcomb understood the

beach between the waterfront and lot 89 was owned by DLE, as were the existing docks. Upon the purchase, Holcomb was provided with a copy of the association's by-laws. The by-laws state the association owns, among other things, "Water Frontage includ[ing] the beach, the boat ramp, and the entire shoreline except for lots A, B, C, D, and O" and "All Association docks." The by-laws also provide:

> Dock and Dock Repairs: Each occupied lot is entitled to one dock space. Docks are assigned on a seniority basis with a move up list that will be updated each time a move is made. The dock list, the move up list and a list of landowners who have paid their dock fee will be posted in the Association owned shed. You will be responsible for the maintenance of your assigned dock. Materials for repairs will be provided by landowners Association.

In June 2010, a month before the dam broke, Holcomb filed suit against DLE, seeking the district court to declare Holcomb had "a right of easement across shoreline property and Waterfront Access Area, and for other relief as is just and equitable in the premises," under theories of easement by prescription and easement by implication. The petition alleged that "because previously existing docks," which patrons of his resort had used to access his resort, "were in a state of disrepair and posed a hazard to users" and DLE "refused to provide the material to rebuild or repair the docks," he "constructed docks on the waterfront . . . adjacent to his property on property owned by [DLE]." The petition stated Holcomb had attempted to obtain a dock permit but was "denied as a result of the refusal of [DLE] to sign the dock-permit application."

The litigation between Holcomb and DLE was "put on hold in order to attempt to arrive at a mutually agreed upon resolution of the issues." The matter was continued by agreement of the parties over the years, and trial was later set

for 2016, after work had begun on the dam's reconstruction and on new rules and regulations regarding the use of the subdivision's properties, including Holcomb's property. While the dam was under construction and no lake existed, DLE "worked with the Iowa Department of Natural Resources to rebuild the [d]ocks in compliance with state law and regulations and to build a concrete wall." Even though there was no lake, DLE continued to rent the newly constructed docks to members in good standing, and those members continued "to pay all dues, assessments and the dock rental fees." DLE claimed Holcomb had not paid the "annual assessment or dock fee for the second half of 2010" and for the years that followed.

Trial to the court on Holcomb's petition was held in March 2016. Thereafter, the district court entered its judgment denying Holcomb's "claim for easement by prescription and/or by implication." The court found Holcomb, having paid DLE's dock rental fees and yearly assessments in 2006, 2007, 2008, and 2009, did not take any affirmative action to demonstrate open and hostile use of the docks which would have been necessary to establish a prescriptive easement. Additionally, the court found no easement by implication, explaining:

> There is no evidence that DLE ever intended to create an easement for Holcomb. His claim is no better than any other property owner on the lake who has maintained a dock for many years. His claim is that the docks have existed for a very long time for the benefit of [his and prior lot 89 owners'] property, but there is no proof that any prior owner considered such use to constitute an easement. Lastly, it is debatable as to whether the docks are reasonably necessary for the use and enjoyment of [Holcomb's] property, or whether they are a mere convenience. The only claim made by [Holcomb] is that approximately half of his customers arrive by boat. Holcomb would be whole if he continued to rent the docks in front of his property, rather than owning them.

Holcomb subsequently filed a motion seeking an enlargement of the court's findings. Holcomb stated he believed the court's judgment was "incorrect because the Court focused on the more limited issue of the right to use docks, and not on the broader issue Holcomb asserted, which was the right to access across the shoreline based upon an easement by implication or prescription." Holcomb maintained "the issue is not one of the right to use docks, but rather the right of access," and he requested the court enlarge its findings to find that he—the owner of lot 89 and the business thereon—"has an easement by implication for patron access from the lake," even if he must rent the docks—which he was willing to do "for a reasonable rental." The court thereafter denied Holcomb's motion.

Holcomb now appeals the district court's judgment, arguing the district court should have recognized that an easement by implication in favor of his property "across the Waterfront Access Area" was established at the time "the owner of both the Waterfront Access Area and the [lot 89] property conveyed each parcel." The claim was tried in equity, and our review is de novo. *See* Iowa R. App. P. 6.907; *Larman v. State*, 552 N.W.2d 158, 161 (Iowa 1996). "Equity is not bound by forms, fiction, or technical rules but will seek and determine the true situation." *Tri-State Ref. & Inv. Co. v. Opdahl*, 481 N.W.2d 710, 712 (Iowa Ct. App. 1991).

"An easement by implication is one which the law imposes by inferring the parties to a transaction intended that result, although they did not express it." *Brede v. Koop*, 706 N.W.2d 824, 830 (Iowa 2005) (citation omitted).

An easement by implication arises under the following conditions:

> (1) a separation of the title; (2) a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and (3) it must appear that the easement is continuous rather than temporary, and [(4)] that it is essential to the beneficial enjoyment of the land granted or retained.
>
> An easement is "essential" when it is reasonably necessary, as distinguished from being merely convenient. "The intent to grant or reserve an easement by implication must be determined as of the time of the severance of the unity of ownership."

*Id.* (alteration in original) (citations omitted).

The Camp-O-Delhi subdivision was platted in 1984. The original covenants were executed and recorded in October 1984. The separation of title here occurred in 1985 when C-O-D sold lot 89 to the Stenders, the predecessors in interest to Holcomb, and sold the waterfront to DLE. The issue, then, is whether the circumstances of the transaction evidence an intent by these parties to grant or reserve an easement in the land C-O-D sold to the Stenders. *See id.* at 831. We think not. The covenants predated the sale and evince C-O-D's intent. The covenants provide, "Lake frontage will be owned and maintained by the lot owners' association. Lake frontage cannot be sold." They also provide, "Docks will be owned by the Lot owners' association and may be rented by the year to lot owners." Furthermore, they provide, "All roads and easements within Camp-O-Delhi . . . will be owned and maintained by the lot owners' association." It is thus crystal clear that at the time of severance of the unity of title, the parties did not intend to grant or reserve an easement of access to the lake, at least by dock, to the owner of lot 89.

When Holcomb filed this lawsuit, it was all about the docks. Holcomb was miffed when DLE refused to provide material to rebuild or repair the docks that Holcomb's boating patrons utilized to access his business. Taking matters into his own hands, Holcomb constructed his own docks on DLE's waterfront property. The lawsuit was brought after the Iowa Department of Natural Resources cited Holcomb for having no dock permit. After losing in district court, Holcomb appeared to switch gears, claiming in his motion to enlarge that the district court erred in focusing on "the limited issue of the use of docks" and that "[t]he issue is not an easement by implication to use docks. Rather, the issue is our easement by implication for the right of access across the Waterfront Access Area." Telling is the fact that Holcomb has not articulated—either to the trial court or to us—what kind of access easement it is he seeks. Nonetheless, it is clear he wants his boating patrons to have dock access to his business. Unless they beach their boats, the only practical boat access is by dock. Holcomb's quest for an easement by implication is merely a thinly veiled attempt to circumvent the covenants to which he is bound. Why would he seek an easement by implication if it were not for the purpose of installing his own docks on DLE waterfront? He answered this question at trial. Holcomb testified he wanted to start the business back up and that he had dock materials to put up his own docks if he could get a dock permit and establish a right of access.

As we noted above, an easement by implication was not intended to be reserved or granted at the time of the separation of title, and therefore Holcomb is not entitled to one. Consequently, we affirm the trial court's judgment.

**AFFIRMED.**